UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-426-FDW
3:17-cr-134-FDW-DSC-3

| | |
|---|---|
| MONTRAYA ANTWAIN ATKINSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to

Vacate Sentence, (Doc. No. 1).

**I.       BACKGROUND**

Petitioner was charged in a 69 Count Bill of Indictment for his involvement in a United

Blood Nation ("UBN") RICO conspiracy along with 82 co-defendants. The charge pertaining to

Petitioner is Count One, RICO conspiracy in violation of 18 U.S.C. § 1962(d); (3:17-cr-134

("CR") Doc. No. 3).   Specifically, the Indictment alleges that: Petitioner and the other co-

Defendants were members and/or associates of UBN at all times relevant to the Indictment; UBN

is an "enterprise;" and "Beginning on a date unknown to the Grand Jury, but from at least in or

about 2009, and continuing to the present date, the Western District of North Carolina and

elsewhere, defendants … together with others both known and unknown to the Grand Jury, each

being a person employed by and associated with the United Bloods Nation, an enterprise engaged

in, and the activities of which affected, interstate and foreign commerce, did knowingly and

intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct

1

and participate, directly and indirectly, in the conduct of the affairs of the United Bloods Nation enterprise through a pattern of racketeering activity, as defined in Title 18 United States Code Sections 1961(1) and (5), which pattern of racketeering activity consisted of:

    i.      multiple acts involving murder …; and

    ii.      multiple offenses indictable under 18 U.S.C. §§ 1028, 1343, 1344, and 1951; and

    iii.      multiple offenses involving narcotics trafficking….

(CR Doc. No. 3 at 24-25).

Further, the Indictment alleges that it was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise. (Id.). As overt acts, the Indictment charges:

n. On or about April 17, 2011, (3) MONTRAYA ANTWAIN ATKINSON a/k/a "Hardbody" and others known and unknown to the Grand Jury assaulted an individual known to the Grand Jury….

mm. On or about May 8, 2013, (3) MONTRAYA ANTWAIN ATKINSON a/k/a "Hardbody" and (21) PEDRO GUTIERREZ … conducted a gang meeting inside the New York Department of Corrections….

mmmmmmmmmm. On or about October 15, 2016, (3) MONTRAYA ANTWAIN ATKINSON … and (56) MYQUAN LAMAR NELSON … conducted a gang meeting.

nnnnnnnnnn. On or about October 16, 2016, (3) MONTRAYA ANTAIN ATKINSON .. and (21) PEDRO GUTIERREZ … conducted a gang meeting inside New York Department of Corrections….

Eeeeeeeeee. On or about October 27, 2016, (3) MONTRAYA ANTWAIN ATKINSON … and (56) MYQUAN LAMAR NELSON … discussed gang business.

(CR Doc. No. 3 at 28, 32, 61 63).

On February 28, 2018, a hearing inquiring into the status of counsel[1] and for the entry of a guilty plea pursuant to Rule 11 came before a United States Magistrate Judge. See (CR Doc. Nos. 1128, 2308). At the hearing, Petitioner explained that he wished to see more of the State's evidence, accordingly, the matter was recessed. (CR Doc. No. 2308 at 20). When the hearing reconvened, Petitioner indicated that he was satisfied with counsel and wanted to go forward with his guilty plea. (Id. at 21). A Rule 11 hearing then commenced and Petitioner was sworn. (Id. at 22). Petitioner stated, under oath, that he received a copy of the Bill of Indictment and discussed it with his lawyer. (Id. at 24). The charge and Petitioner's sentencing exposure were summarized in open court and Petitioner stated that he understood. (Id. at 25-27). Petitioner discussed with his lawyer how the U.S. Sentencing Guidelines might apply to his case and understood that the Court would not be able to determine his sentence until a Presentence Investigation Report ("PSR") had been completed, and that he may receive a sentence that is different from the guidelines, and that he would still be bound by his guilty plea if he the sentence is more severe than he expects, or if the Court does not accept the Government's recommendation. (Id. at 28). Petitioner stated that he understood the rights he was waiving by pleading guilty and his guilty plea's consequences. (Id. at 27, 29-30). He agreed that he understood that he had the right to plead not guilty and have a trial. (Id. at 29). Petitioner stated, under oath, that he is guilty of Count One and wanted the Court to accept his guilty plea. (Id. at 30). Petitioner further stated that he discussed the Factual Basis with counsel, understood it, and agreed with it. (Id. at 31). Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, or made any promises of leniency or a light sentence to get him to plead guilty. (Id. at 31-32). Petitioner stated that he had enough time to discuss any

[1] The inquiry into the status of counsel was triggered by a handwritten Letter addressed to the undersigned, filed on February 23, 2018 expressing some discomfort with the CJA-appointed defense attorney, Joseph Luther Bell, Jr. (CR Doc. No. 1098).

possible defenses with counsel and that he was satisfied with counsel's services. (Id. at 32).

The Factual Basis, which Petitioner and his attorney signed, provides in relevant part:

Several UBN Hoods, including the Nine Trey Gangster Hood, have a presence in the Western District of North Carolina….

The UBN's primary sources of income in the Western District of North Carolina area derive from illegal activity, including but not limited to: narcotics trafficking, wire fraud, robberies, and the sale and transfer of weapons. The UBN enterprise requires that a portion of these illegally-obtained profits be transferred to gang leaders through monthly dues or other monetary contributions….

The UBN enterprise in North Carolina and elsewhere, through its members and associates, engages in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1)…. It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise….

All of the defendants named in the Indictment are members or associates of the UBN….

Montraya Antwain ATKINSON a/k/a "Hardbody" is a member of the Nine Trey Gangsters Hood of the UBN. ATKINSON held the leadership rank of "High." ATKINSON is depicted on social media wearing UBN affiliated gang colors, using UBN gang terminology, associating with other UBN members, and displaying UBN gang hand signals.

ATKINSON participated in [five] UBN gang meetings [with co-Defendants in Albemarle, North Carolina and New York]…

On April 7, 2011, ATKINSON and other members of the UBN attacked an inmate at a prison.

ATKINSON participated in racketeering acts in furtherance of the UBN enterprise including drug trafficking.

On July 1, 2016, ATKINSON possessed marijuana and cocaine with intent to distribute. Pursuant to a traffic stop, officers searched ATKINSON's vehicle following their detection of the odor of marijuana emanating from his vehicle. Law enforcement recovered 1.5 grams of cocaine, 4 grams of marijuana, and $2,548 in U.S. currency from ATKINSON's vehicle.

Over a two-year period in 2015 through 2017, ATKINSON purchased and sold powder cocaine, a Schedule II controlled substance.

4

At all times relevant to the Indictment, the defendant was a member of the UBN enterprise, knowingly and intentionally agreed to conduct or participate in the affairs of the UBN enterprise, and knowingly and intentionally agreed that he or some other member of the conspiracy would commit at least two racketeering acts.

(CR Doc. No. 1122 at 2-4) (paragraph numbers omitted).

In addition to the foregoing, the PSR noted that "[t]he amount of cocaine, a Schedule II controlled substance, that was known to or reasonably foreseeable by [him] (including relevant conduct) was at least 5 kilograms but less than 15 kilograms." (CR Doc. No. 188 at ¶ 49). The PSR scored the base offense level as 30 because the underlying racketeering activity involved drug trafficking, and the amount of cocaine known to or reasonably foreseeable by Petitioner was at least five kilograms but less than 15 kilograms, pursuant to U.S. Sentencing Guidelines §§ 2D1.1(a)(5) and 2E1.1(a)(2). (Id. at ¶ 56). Two levels were added because Petitioner directed the use of violence pursuant to § 2D1.1(b)(2). (Id. at ¶ 57). Four levels were added because Petitioner was an organizer or leader of a criminal activity involving five or more participants or was otherwise extensive pursuant to § 3B1.1(a). (Id. at 59). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 33. (Id. at ¶¶ 63-65). Petitioner had six criminal history points, and two more points were added because Petitioner committed the instant offense while under a criminal justice sentence, resulting in a total of eight criminal history points and a criminal history category of IV. (Id. at ¶¶ 83-85). The resulting advisory guidelines range was 188 to 235 months' imprisonment followed by between one and three years of supervised release. (Id. at ¶¶ 128, 131).

Defense counsel filed PSR objections addressing *inter alia*: the drug weight attributable to him; the two-level offense level increase for "use of violence;" and the four-level offense level

increase for Petitioner's leadership role.[2] (CR Doc. No. 1794).

A sentencing hearing came before the Court on September 26, 2018. Petitioner stated that all of his answers to the Magistrate Judge's questions at the Rule 11 hearing were true and correct and that he would answer them the same way if he were asked again. (CR Doc. No. 2309 at 4-5). He also agreed that he received the Acceptance of Plea, reviewed it for accuracy, and signed it. (Id. at 5). Petitioner admitted that he is, in fact guilty of RICO conspiracy as he admitted at the Rule 11 hearing. (Id. at 6). Petitioner further admitted that he received the PSR, read it and understood it, and reviewed it with his lawyer. (Id. at 7-8). Defense counsel raised the objections noted above, and additionally argued that Petitioner should not have received the two-point increase in his criminal history category for being under a criminal justice sentence at the time of the instant offense.[3] (Id. at 8). The Government presented testimony from Michael Sardelis, a Charlotte Mecklenburg Police Department officer, regarding Petitioner's gang activities and the drug amount attributable to him. See, e.g. (Id. at 14-21, 51-52). The parties then argued their positions on the PSR objections. See (Id. at 66-75). The Court overruled Petitioner's objections and found that the PSR correctly calculated the level as 33, the criminal history category as IV, and the advisory guideline imprisonment range as 188 to 235 months' imprisonment. (Id. at 12-13, 74-77). Defense counsel then argued for a downward variance from the advisory guideline range. Counsel argued *inter alia* that Petitioner had a difficult childhood, is intelligent and hard-working, made an effort to remove himself from gang life before his arrest, and that a variance would be appropriate in light of some of the co-Defendants' sentences. (Id. at 77-80). Petitioner

---

[2] Other objections regarding factual matters such as Petitioner's employment history, and the scoring of his criminal history were incorporated into the final PSR. See (CR Doc. No. 1800 at pg. 37-39).

[3] The Court allowed the objection although it was technically untimely. (CR Doc. No. 2309 at 11).

6

addressed the Court; he apologized and expressed remorse. (Id. at 81). The Government argued that Petitioner should be sentenced in the middle of the advisory guideline range. (Id. at 81-83). The Court denied the defense motion for a variance and, after considering the appropriate factors, sentenced Petitioner to 208 months' imprisonment followed by three years of supervised release. (Id. at 83-87). The Judgment was entered on October 18, 2018. (CR Doc. No. 2185).

On direct appeal, Petitioner argued that his sentence was procedurally unreasonable because the Court erroneously: (1) calculated the drug weight attributable to him because the Government failed to establish by the preponderance of the evidence that he should be held responsible for at least five kilograms of cocaine; (2) increased his offense level by two levels because by finding that he used violence, made credible threats to use violence, or directed the use of violence in relation to a drug trafficking offense; and (3) increased his offense level by four levels for being an organizer or a leader of the criminal activity to which he pleaded guilty. The Fourth Circuit Court of Appeals affirmed on May 29, 2020, finding that "the Government presented ample evidence allowing the district court to approximate that at least five kilograms of cocaine was reasonably foreseeable to [Petitioner] during the course of his participation in the conspiracy to which he pled guilty;" "the Government presented sufficient evidence from which the district court could conclude that [Petitioner] directed violence as part of his participation in the racketeering conspiracy…;" and "the district court did not clearly err when it enhanced [Petitioner's] offense level by three levels for being a leader or organizer of the RICO conspiracy" in light of Petitioner's "undisputed rank within the organization…, [Petitioner's] admissions in the statement of facts to which he agreed, and law enforcement's testimony regarding [Petitioner's] role in the offense…." United States v. Atkinson, 815 F. App'x 704, 707-08 (4th Cir. 2020).

Petitioner filed the instant § 2255 Motion to Vacate on August 11, 2021.[4] (Doc. No. 1). He argues that his plea was not knowing and voluntary as a result of ineffective assistance of counsel, *i.e.*, counsel failed to inform him that he had defenses to the RICO conspiracy charge, advised Petitioner that his desire to go to trial "wasn't a good idea because [he] wouldn't have any chance of acquittal," and rushed Petitioner through the plea process. (Doc. No. 1-1 at 2-3, 9 n.5). Petitioner argues that there is a reasonable probability that he would have proceeded to trial but for counsel's misadvice. (Id. at 2). He asks the Court to vacate his conviction and sentence, and return him to the pre-plea state of the proceedings. (Id. at 2-3). The Government argues that the § 2255 Motion to Vacate should be denied on the merits because Petitioner has failed to demonstrate any deficient performance or prejudice. (Doc. No. 6). Petitioner has not filed a reply and the time to do so has expired.

## II.     SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments

---

[4] <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C.A. foll. § 2255 (addressing inmate filings).

presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[5]

Petitioner argues that counsel: (1) failed to inform him that he had potential defenses to the RICO conspiracy charge, *i.e.*, that (i) he never visited Charlotte; (ii) he did not enter into an agreement with anyone named in the indictment to commit a violent act nor did he instruct anyone to commit such an act; (iii) he never bought or sold drugs from or to anyone named in the indictment, and (iv) was not conspiring to commit the same offenses as his co-defendants; (2) misadvised him that he had no chance of acquittal if he went to trial; and (3) rushed him through the plea process. (Doc. No. 1-1 at 2-3, 12).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional

---

[5] Petitioner's claims have been liberally construed, restated, and renumbered. Any argument or subclaim contained in the lengthy Motion to Vacate and supporting Memorandum (Doc. No. 1-1), which is not specifically addressed in this Order, has been considered and rejected.

9

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

First, Petitioner argues that counsel failed to inform him of potential defenses. This claim is refuted by the record insofar as the Petitioner stated, under oath at the Rule 11 hearing, that he understood the RICO conspiracy charge, had discussed any possible defenses with counsel, was satisfied with counsel's services, and is guilty of the charged offense. (CR Doc. No. 2308 at 24, 27-30, 32). Petitioner's present self-serving contentions to the contrary are rejected. Blackledge

10

v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Moreover the "potential defenses" that the Petitioner has identified would not have provided any meritorious defense to the charged RICO conspiracy. To convict the defendants of RICO conspiracy, as charged in Count One, the Government was required to prove "the existence of a RICO enterprise in which the defendant conspired to participate, and that the defendant conspired that a member of the enterprise would perform at least two racketeering acts constituting a pattern of racketeering activity." United States v. Taylor, 942 F.3d 205, 213 (4th Cir. 2019) (quoting United States v. Pinson, 860 F.3d 152, 161 (4th Cir. 2017); citing Salinas v. United States, 522 U.S. 52, 62 (1997)). And to establish a "pattern of racketeering activity," the government was required to prove, as the district court instructed the jury, that "the conspiracy involved or would have involved the commission of [at least] two racketeering acts." Id.; see 18 U.S.C. § 1961(1)(D) (racketeering activity includes, but is not limited to, "any offense involving … the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance… punishable under any law of the United States"). Although a conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of a racketeering act, each conspirator must share the "same criminal objective." Salinas, 522 U.S. at 63-64.

Petitioner contends that he never actually visited Charlotte. Assuming *arguendo* that this

11

is factually accurate, such would not have provided a defense to the RICO conspiracy charge. A conspiracy may be prosecuted "in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed," even if the defendant charged with conspiracy never entered the district. United States v. Gilliam, 975 F.2d 1050, 1057 (4th Cir. 1992); see Hyde v. United States, 225 U.S. 347, 356-57 (1912) (although none of the defendants had entered the district as part of the conspiracy, venue was nevertheless appropriate based on the overt acts of a co-conspirator there); United States v. Bowens, 224 F.3d 302, 311 n. 4 (4th Cir. 2000) ("In determining venue for a particular offense, not only is the conduct of the defendant himself considered, but the conduct of anyone with whom he shares liability ...."). Thus, whether a particular defendant was ever physically present in the district may be irrelevant to the issue of venue. See United States v. Al–Talib, 55 F.3d 923, 928 (4th Cir.1995). If the criminal conduct spans multiple districts, the crime may be tried in any district in which at least one conduct element was committed. United States v. Umana, 750 F.3d 320, 334 (4th Cir. 2014) (citing 18 U.S.C. § 3237(a); Rodriguez-Moreno, 526 U.S. at 281).

Had counsel raised the issue of venue, the prosecutor could have easily demonstrated that venue lies in this district because "much of the criminal activity as well as acts of racketeering occurred in Charlotte...." United States v. Gilmore, 2017 WL 9516566, at *3 (W.D.N.C. July 20, 2017), adopted by 2017 WL 3913028 (W.D.N.C. Sept. 7, 2017) (denying a venue challenge raised by one of Petitioner's co-Defendants); see United States v. Porter, 821 F.2d 968, 975 (4th Cir. 1987) (the government need only show that an act occurred in the district by a preponderance of the evidence to establish venue). Thus, it was reasonable for counsel not to inform Petitioner that venue was a potential defense.

Petitioner's contentions that: he did not enter into an agreement with anyone named in the

12

Indictment to commit a violent act, or instruct anyone to commit such an act; engage in a drug transaction with anyone named in the Indictment; or conspire to commit the same offenses as his co-Defendants are also unavailing. The Factual Basis, that Petitioner admitted under oath is true, provides that: "[s]everal UBN Hoods, including Nine Trey Gangster Hood, have a presence in the Western District of North Carolina;" "[t]he UBN enterprise in North Carolina and elsewhere, through its members and associates, engages in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1);" Petitioner had a "high" leadership rank in UBN; UBN's primary sources of income in the Western District of North Carolina area derive from illegal activity, including but not limited to narcotics trafficking; Petitioner participated in racketeering acts in furtherance of the UBN enterprise including drug trafficking; Petitioner participated in UBN meetings with co-Defendants in New York and North Carolina; and "[a]t all times relevant to the Indictment, the defendant was a member of the UBN enterprise, knowingly and intentionally agreed to conduct or participate in the affairs of the UBN enterprise, and knowingly and intentionally agreed that he or some other member of the conspiracy would commit at least two racketeering acts." (CR Doc. No. 1122 at 2-4). The foregoing established that Petitioner engaged in RICO conspiracy by knowingly and intentionally agreed with others to conduct or participate in the affairs of the enterprise; knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts; and that the coconspirators shared the same criminal objective. It was not necessary for the Government to prove that the racketeering acts were violent; that the Petitioner engaged in drug transactions with UBN members; or that he conspired to commit the same crimes as his co-Defendants. His admitted conduct satisfies the elements of a RICO conspiracy defense and none of the issues Petitioner has described would have provided him with a meritorious defense. See, e.g., United States v. Mathis,

13

932 F.3d 242 (4th Cir. 2019) (agreement to pursue the same criminal objective of the enterprise was apparent from defendants' roles as founders and leaders of the Double Nine Goon Syndikate ("DNGS") gang; they had a central role in directing the enterprise which required its members to commit crimes for the gang's welfare and support, and this strongly supported the jury's conclusion that they were actively involved in the RICO conspiracy conducted by DNGS); United States v. Thomas, 490 F. App'x 514 (4th Cir. 2012) (testimony of numerous government witnesses testified that Tree Top Piru ("TTP"), a subset of the Bloods gang, employed murder as one of the group's objectives, or as a means to accomplish an objective, was sufficient evidence for a reasonable juror to find that TTP's racketeering activities included conspiracy to commit murder); United States v. Griffin, 660 F.2d 996 (4th Cir. 1981) (evidence was sufficient to show the existence of an enterprise with a common purpose, where the defendants had a common objective of associating themselves in an ongoing, informally organized enterprise to bribe and corrupt).

With regards to Petitioner's allegation that counsel misadvised him that he had no chance of achieving an acquittal if he went to trial, this too fails. Assuming *arguendo* that counsel so advised Petitioner, this was not deficient performance. The Petitioner's conduct as set forth in the Factual Basis, PSR, and sentencing hearing testimony demonstrate that the Government had extremely strong evidence of Petitioner's guilt that would have made the possibility of acquittal highly unlikely or impossible. It was not deficient for counsel to provide Petitioner a realistic assessment of the strength of the Government's case and the likelihood of his conviction at trial. While Petitioner likely felt pressured by the reality of his situation, such was not of counsel's making and did not render the plea involuntary.

Finally, Petitioner contends that counsel rushed him to enter his plea. This claim is conclusively refuted by the record. Petitioner expressed concerns about the representation at the

14

Rule 11 hearing and the Magistrate Judge recessed the proceedings so that Petitioner and counsel could confer. (CR Doc. No. 2308 at 19-20). When the case came back on the record, Petitioner explained that his concerns had been addressed and that he was ready to enter his guilty plea. (Id. at 21). He stated on the record, and under oath, that he had enough time to confer with counsel and was satisfied with counsel's services. (Id. at 32). He further stated that nobody threatened, intimidated, or forced him to plead guilty, or made any promises of leniency or a light sentence to get him to plead guilty. (Id. at 31-32). His present self-serving contentions to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Moreover, Petitioner has failed to demonstrate prejudice. Although Petitioner conclusively contends that there is a reasonable probability that he would have proceeded to trial but for counsel's allegedly deficient performance, the record demonstrates that it would not have been objectively reasonable for him to do so. It was highly beneficial for Petitioner to plead guilty, as he received a three-level reduction in the offense level for acceptance of responsibility, which placed him in an advisory range of 188 to 235 months' imprisonment. Without that reduction he would have had an advisory range of 262 to 327 months' imprisonment. See U.S.S.G. Sentencing Table (2016). Further, there was strong evidence of his guilt as outlined in the Factual Basis, PSR, and sentencing hearing testimony. He has failed to demonstrate that it would have been objectively reasonable for him go to trial in light of that strong evidence. See United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). Accordingly, Petitioner has failed to demonstrate that he was prejudiced by

15

counsel's allegedly deficient performance.

For all the foregoing reasons, Petitioner's § 2255 Motion to Vacate is dismissed with prejudice and denied.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice and denied.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3.    The Clerk is instructed to close this case.

Signed: December 14, 2021

Frank D. Whitney
United States District Judge